IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

**RONALD CUNAGIN, as father and**
**Next friend of J.C., an infant,**

    Plaintiff,

v.                                                          Civil Action No.   3:19-cv-00250

**CABELL HUNTINGTON HOSPITAL, INC.**
**A West Virginia corporation,**

    Defendant.

## COMPLAINT

For his Complaint against Defendant, Plaintiff alleges and says as follows:

1. Infant Plaintiff, J.C., who is proceeding under an assumed name to protect his privacy, brings this action against Defendant Cabell Huntington Hospital, Inc. by his father and next friend, Ronald Cunagin, (Plaintiff). Plaintiff, as is J.C., is a citizen and resident of Lovely, Commonwealth of Kentucky.

2. Cabell Huntington Hospital, Inc. (CHH) or (Defendant), is a West Virginia not for profit corporation with its hospital located in Cabell County, West Virginia and is a citizen and resident of the State of West Virginia.

3. Jurisdiction is appropriate in the United States District Court for the Southern District of West Virginia pursuant to 28 USC §1332 inasmuch as this action involves citizens of different states thereby creating complete diversity of citizenship in which Plaintiff is a citizen and resident of the Commonwealth of Kentucky and in which Defendant is a citizen and resident

1

of the State of West Virginia.  Further, the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interests and costs.

4. Venue is appropriate in the Huntington Division of the United States District Court for the Southern District of West Virginia in that the conduct giving rise to this Complaint occurred exclusively in Cabell County, West Virginia and within the Huntington Division of said court.

## COUNT I
## STATEMENT OF THE CASE

5. Infant Plaintiff J.C. was at all times material hereto when the multiple bone fractures described herein were inflicted confined solely to the Neo-Natal Intensive Care Unit (NICU) and the Neo-Natal Therapeutic Unit (NTU) units at CHH from the date of delivery, July 15, 2017, until his date of transfer on August 23, 2017, by air transport to Pikeville Medical Center ("PMC").  Subsequently, he was transferred by air transport to the University of Kentucky Health Care ("KHC") and the Shriner's Children Hospital ("SCH") in Lexington, Kentucky on August 27, 2017.  He was finally discharged to go home on September 10, 2017.

6. On admission to PMC, J.C. was a five-week-old infant weighing six pounds. There, physicians identified a fracture of the right humerus which was previously reported by CHH on August 19, 2017.  Multiple inflicted fractures including rib fractures, were identified, at PMC, KHC and SCH all of which were determined to have occurred while J.C. was at CHH.

7. In fact, the Kentucky Cabinet for Health and Family Services (Cabinet) conducted a thorough investigation of the source of his multiple bone fractures including J.C.'s admissions to CHH, PMC, KHC and SCH (collectively hospitals) and following his discharge home with his family in Lovely, Kentucky.  After interviewing CHH nurses and staff, and other hospital personnel, the Cabinet concluded, "3.  The only people that had access to the child without

supervision were the medical staff (unknown perp) leading the Cabinet to believe then an unknown person caused deliberate harm to the child." at CHH. All fractures were determined to have been inflicted before his transfer from CHH even if not identified until after his transfer from CHH.

8. Because J.C. is a resident of the Commonwealth of Kentucky, as is Plaintiff, the Cabinet investigated the fractures inflicted on J.C. at CHH because they constituted physical abuse to a citizen of the Commonwealth. The Cabinet concluded, as CHH reported, that the parents never had the opportunity to have injured their child and they did not injure their child; that collaterals, family and medical staff deny that the parents could have been the perpetrators of the broken bones or fractures; CHH testing by an outside laboratory confirmed there was no genetic or bone abnormality; that the CHH staff supervised J.C. at all times; that in total it was determined that J.C. had suffered three broken ribs, one broken arm and broken legs while at CHH; and, that a nurse or staff member was constantly present during the family's visits so that the only perpetrator(s) would be an employee of CHH or a person permitted by CHH to enter the NICU and NTU, or both, who inflicted deliberate harm to J.C.

9. Because infant J.C. was a vulnerable target, the perpetrator(s) at CHH clearly had reasons to select him from this intentionally infliction of child abuse.

10. As part of J.C.'s diagnosis, examination, care and treatment at KHC, comprehensive testing was conducted by the Center for Precision Diagnostics Collagen Diagnostic Laboratory, University of Washington to determine the presence of osteogenesis imperfecta or a related bone disorder. The January 2, 2018 report which included testing results, concluded that no abnormality was found: "We did not identify a pathogenic variant in the coding sequence or the nearby splice site domains of the genes sequenced." As a result, KHC

determined, in part, that J.C. has had an extensive genetics workup and no abnormality that would make him susceptible to fractures were identified. Again, the type of fractures identified (specifically) rib and metaphyseal[1] are highly specific for non-accidental trauma.

11. A PMC radiology report dated August 23, 2017 noted: "Acute mildly displaced spiral-type oblique fracture deformity through the mid shaft of the right humerus. This raises the possibility of nonaccidental trauma." There was also concern reported at that time of a left tibia fracture which was later confirmed to have been inflicted at CHH.

12. Finally, CHH records note on August 19, 2017 "an acute fracture of the right humeral diaphysis with significant displacement and angulation … [and] … a "[p]alpable deformity of the right humerus, no lacerations, ecchymosis swelling". CHH which has never identified its employee(s) responsible for inflicting these fractures, transferred J.C. to PMC without any effort to identify the perpetrator or preserve surveillance and other evidence of harm inflicted on J.C. at CHH.

13. At the time of transfer of J.C., Defendant CHH reported no fractures other than those identified in paragraph 12. Following transfer, admission and diagnosis at PMC, however, SHC and KHC identified multiple additional fractures not identified at CHH. The right humerus fracture identified at CHH was never related to or investigated for illegal child abuse.

14. The fractures and personal injuries "inflicted" on the infant J.C. while at CHH consisting of multiple different bone fractures were not and could never be considered to have occurred as part of "healthcare" or from any legitimate medical treatment provided by CHH.

15. The term "healthcare" is defined in West Virginia Code § 55-7B-2(e) as "any act or treatment performed or furnished; or which should have been performed or furnished by any

---

[1] Metaphyseal fractures refer to an injury to the growing plate at each end of a long bone.

4

healthcare provider for, to or on behalf of a patient during the patient's medical care, treatment or confinement." In no way were J.C.'s bone fractures and personal injuries the result of "healthcare" or any legitimate medical purpose.

16. Instead, Defendant, its employee(s) or agents in violation of West Virginia Code § 61-8D-3 committed child abuse on the infant, J.C., following his birth and[2] before his transfer from CHH on August 23, 2017 to PMC.

17. West Virginia Code § 61-8D-3 states: "(a) If any parent, guardian or custodian shall abuse a child and by such abuse cause such child bodily injury as such term is defined in section one, article eight-b of this chapter, then such parent, guardian or custodian shall be guilty of a felony." CHH, as a custodian of J.C., by its employee(s) or agent(s), abused this child in violation of West Virginia Code § 61-8D-3.

18. West Virginia Code § 61-8B-1 defines: (9) "Bodily injury" means substantial physical pain, illness or any impairment of physical condition". CHH inflicted bodily injury to infant J.C. in violation of West Virginia Code § 61-8B-1.

19. Defendant CHH, by its employees or agents, was determined through an investigation by a highly reliable governmental agency charged with specialized knowledge of child abuse and a highly reliable medical center with specialized knowledge of child abuse to have intentionally inflicted multiple separate fractures on prematurely born infant, J.C., who weighed at the time six pounds at the time of his transfer to PMC from CHH. The fractures include at least the following:

    a.    Fracture of multiple (three) ribs;

    b.    Fracture of the left tibia;

---

[2] The Cabinet determined and subsequent hospital admissions at PMC, KHC and SCH diagnosed from the same imaging performed at CHH that all of J.C.'s fractures occurred before his transfers from CHH.

  c.  Fracture of the right humerus; and

  d.  Fracture to the right tibia[3].

  20.  CHH's employee(s) or agent(s) as custodians of the infant J.C., intentionally inflicted on him multiple bone fractures causing great injury, suffering pain and emotional harm, damages and permanent harm and/or injury, as well as expenditures for the cost of medical, hospital care and treatment, past, present and future for the infant J.C. This illegal child abuse served no legitimate medical purpose.

  21.  The actions of Defendant CHH or its inactions in not identifying or preventing the perpetrator from inflicting fractures, harm and permanent injury on the infant, J.C., were intentional, willful, wanton and reckless and as a direct and proximate result J.C. sustained repeated bone fractures, related injury, pain, suffering, emotional harm, distress, damages, permanent harm and injury, as well as expenditures on his behalf for the cost of medical, hospital care and treatment, past, present and future.

  22.  The parents and the entire family of J.C. were completely exonerated by Defendant CHH, as well by the Cabinet, and by subsequent hospitals of in any way causing the bodily injury to J.C. described herein.

  23.  As prescribed by West Virginia Code § 49-6A-2, Defendant CHH is mandated to report suspected abuse and neglect to the West Virginia State Department of Health and Human Resources and other proper law enforcement agencies suspected child abuse. Plaintiff demands that CHH produce all reports regarding the child abuse inflicted on J.C.

  24.  CHH has refused to provide Plaintiff with the mandatory reporting of child abuse.

---

[3] There was also a report at KHC of a possible corner fracture of the proximal medial right tibia.

## COUNT II
## BATTERY

25. Plaintiff restates and incorporates by reference the allegations contained hereinabove in each and every paragraph as if set forth verbatim.

26. Defendant CHH, by a perpetrator it employed as an employee or agent, intentionally committed acts of child abuse by inflicting a force on the body of J.C. sufficient to cause multiple separate fractures to J.C., a totally defenseless infant, incapable in any way of preventing or reporting such horrific conduct.

## COUNT III
## TORT OF OUTRAGE

27. Plaintiff restates and incorporates by reference the allegations contained hereinabove in each and every paragraph as if set forth herein.

28. Defendant CHH's conduct intentionally committed acts of child abuse by inflicting a force on the body of J.C. sufficient to cause multiple separate fractures to J.C. through its employees or agents, who were the only personnel alone with the infant J.C. and who in fact were alone with the infant Plaintiff J.C., was atrocious, intolerable in any form of civilized sociality, and so extreme and outrageous as to exceed all bounds of decency.

29. The action of Defendant CHH and its employees or agents was intentional and caused infant J.C. to suffer extreme physical abuse and emotional distress when he had no capacity to understand why such cruel and inhuman treatment was inflicted on him.

## COUNT IV
## INTENTIONAL INFLICTION OF PHYSICAL HARM

30. Plaintiff restates and incorporates by reference the allegations contained hereinabove in each and every paragraph as if set forth verbatim.

31. The actions of CHH by its employees or agents with custody of J.C. were intentional, deliberate and willful in that the multiple fractures were caused by deliberate, violent and vicious striking of the infant Plaintiff, an act beyond the bounds of any civilized society to inflict on a helpless weeks old infant lying in his incubator.

## COUNT V
## NEGLIGENT SUPERVISION

32. Plaintiff restates and incorporates by reference the allegations contained hereinabove in each and every paragraph as if set forth verbatim.

33. Defendant CHH, which had a duty to protect the health, well-being and safety of the infant J.C., knew or should have known through proper supervision that the intentional infliction of harm by its employees or agents occurred and resulted in multiple bone fractures inflicted on a helpless and premature infant.

34. As a direct and proximate result of Defendant's negligent supervision, infant Plaintiff J. C. suffered the harms and injuries alleged herein.

35. J. C.'s injuries from the multiple fractures were, are and will be serious and permanent, all of which will require future medical treatment.

## COUNT VI
## NEGLIGENT SPOLIATION OF EVIDENCE

36. Plaintiff restates and incorporates by reference the allegations contained hereinabove in each and every paragraph as if set forth verbatim.

37. As of the date of transfer of the infant J.C. from CHH to PMC, CHH knew or should have known that the fracture found to exist at CHH had to be reported to certain government and law enforcement agencies as acts of child abuse and knew or should have known that investigation or litigation including a civil action would occur.

38. At the time of the transfer of the infant child J.C. from CHH to PMC on August 23, 2017, Defendant CHH also had actual knowledge that there were bone fractures that were found and, because of its own imaging there were bone fractures that were not reported for reasons known only to CHH which covered up and continues to cover up this child abuse.

39. Defendant CHH has not provided Plaintiff Ronald Cunagin with any explanation as to its responsibility for its employees or agents' actions in deliberately fracturing the bones of infant J.C. which were determined to have occurred at CHH.

40. Defendant CHH knew that at the time the infant J.C. was in the NTU that a number of floater or temporary nurses were assigned to that area. Additionally, and in direct refusal to cooperate with the investigation of the Cabinet, CHH did then and to this day refuses to provide Plaintiff the names of the nurses, other employees or agents who had access to the infant J.C.

41. Defendant CHH refused and still refuses to provide requested specific information, including video or digital images; other forms of surveillance and security; and attendance records, disciplinary records, employment history and qualifications of those personnel it assigned to the NICU and the NTU at the time of the deliberate harm to infant J. C. was inflicted.

42. To the extent the evidence in the control of CHH is not available or has been destroyed, then Defendant CHH is guilty of negligent spoliation of evidence and Plaintiff Ronald Cunagin reserves all rights arising from the negligent spoliation of evidence.

## COUNT VII
## INTENTIONAL SPOILATION OF EVIDENCE

43. Plaintiff restates and incorporates by reference the allegations contained hereinabove in each and every paragraph as if set forth verbatim.

44. If the evidence in any form revealing the infliction of injury to infant J. C. or access of Defendants' employees or agents to the infant Plaintiff J.C. has been intentionally destroyed, discarded or is otherwise missing and is not made available to Plaintiff and to this Honorable Court and if Plaintiff Ronald Cunagin is as a result is unable to prevail, then Defendant CHH is guilty of the intentional spoliation of evidence.

## COUNT VIII
## COMPENSATORY DAMAGES

45. Plaintiff restates and incorporates by reference the allegations contained hereinabove in each and every paragraph as if set forth verbatim.

46. That as a result of the actions and conduct of defendant Cabell Huntington Hospital, Inc. as alleged herein, infant plaintiff J.C. and plaintiff Ronald Cunagin on behalf of J.C. has incurred compensatory damages in the following particulars in the past and will experience in the future and permanently:

   a. medical, hospital and health care cost;
   b. injuries caused by multiple neo-natal or pediatric bone fractures as described herein;
   c. pain;
   d. suffering;
   e. emotional distress and harm; and
   f. permanent harm and injury.

## COUNT IX
## PUNITIVE DAMAGES

47. Plaintiff restates and incorporates by reference the allegations contained hereinabove in each and every paragraph as if set forth verbatim.

48. Defendant CHH, by its employees or agents, acted toward the infant Plaintiff J.C. with a conscious, reckless and outrageous indifference to his health, safety and welfare such that a jury would be justified in awarding punitive damages pursuant to West Virginia Code § 55-7-29.

WHEREFORE, Plaintiff on behalf of the infant Plaintiff demands judgment against Defendant Cabell Huntington Hospital, Inc. for all compensatory and punitive damages as described herein permitted by the laws of the State of West Virginia.

**A TRIAL BY JURY IS DEMANDED**.

        **RONALD CUNAGIN, as father and next friend of J.C., an infant,**

        **By Counsel.**

<u>/s/  Guy R. Bucci	04/05/2019</u>
R. Scott Long, Esquire (WVSB # 2238)
Guy R. Bucci, Esquire (WVSB # 0521)
Raj A. Shah, Esquire (WVSB #11269)
Ashley N. Lynch, Esquire (WVSB #11714)
**HENDRICKSON & LONG, PLLC**
214 Capitol Street (zip 25301)
P.O. Box 11070
Charleston, West Virginia 25339
(304) 346-5500
(304) 346-5515 (facsimile)
scott@handl.com
gbucci@handl.com
rshah@handl.com
alynch@handl.com

A. J. Ryan, Esquire (WVSB #3223)
**RYAN & RYAN**
P. O. Box 1196
Williamson, West Virginia 25661
(304) 235-7510