IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**RONALD CUNAGIN, as father and
Next friend of J.C., an infant,**

    Plaintiff,

v.                                                     Case No.:  3:19-cv-00250

**CABELL HUNTINGTON, HOSPITAL, INC.,
a West Virginia corporation,**

    Defendant.

## MEMORANDUM OPINION and ORDER

Pending is Defendant's Motion for Protective Order, asking the Court to preclude the deposition of Deanna Parsons, Defendant's Director of Risk Management. (ECF No. 149). Plaintiff has filed a response in opposition to the Motion, and Defendant has filed a reply memorandum. (ECF Nos. 160, 161). For the reasons that follow, the Court **DENIES** the Motion.

### I.    Relevant Background

This case involves injuries sustained by an infant, J.C., when he was a patient in the Neonatal Therapeutic Unit at Cabell Huntington Hospital ("CHH"). J.C. was found to have suffered a number of fractures that presumably occurred during his stay in the unit. The cause of the fractures is hotly contested by the parties; however, Plaintiff claims that deficiencies in CHH's security procedures allowed J.C. to be the victim of physical abuse.

In August 2017, shortly after CHH first learned that J.C. had evidence of a fracture, Deanna Parsons began an investigation into the cause of the injury. At CHH, the position

1

of Director of Risk Management is housed in the Office of the General Counsel and the risk manager provides assistance to the General Counsel in performing legal functions on behalf of CHH. Ms. Parsons's investigation of J.C.'s fracture included interviews with key employees of CHH, as well as a record review and other related activities. Ms. Parsons participated in the preparation of a six-page Event Review Form, documenting the investigation and findings. The Event Review Form has not been produced to Plaintiff on the grounds that the Form is protected from discovery as work product, privileged attorney-client communications, and peer review/quality assurance. Ms. Parsons also met with an expert subsequently retained by CHH after Plaintiff filed the instant action.

In the course of discovery, Plaintiff noticed the deposition of Ms. Parsons. CHH now moves for a Protective Order asking the Court to entirely prohibit Plaintiff from deposing Ms. Parsons. CHH has supplied an affidavit from Ms. Parsons, stating that she has no unique or superior knowledge about the facts giving rise to this civil action and all of her communications with CHH's employees relevant to this action occurred at the direction of the General Counsel. (ECF No. 149-1).

## II. Positions of the Parties

CHH argues that it is entitled to a blanket protective order barring the deposition of Ms. Parsons for three reasons. First, CHH contends that Ms. Parsons's communications with CHH staff are privileged as attorney-client communications. (ECF No. 150 at 3). According to CHH, when its employees met with Ms. Parsons to discuss J.C., she was acting entirely in her capacity as a subordinate to General Counsel, and their communications occurred for the primary purpose of providing legal advice to CHH.

Second, CHH asserts that Ms. Parsons's investigation and Event Review Form were completed in anticipation of litigation. (*Id.* at 5). CHH argues that Plaintiff has not

2

shown a substantial need for the fact work product of Ms. Parsons, because Plaintiff has had an opportunity to depose the individuals directly involved in the infant's care, and CHH adds that Plaintiff is further precluded by Fed. R. Civ. P. 26(b)(4) from obtaining the mental impressions, conclusions, opinions, or legal theories of Ms. Parson. CHH emphasizes that Ms. Parsons has no unique or superior knowledge of the events surrounding the infant's injuries and was only involved in the investigation in her role as Director of Risk Management.

Finally, CHH contends that Ms. Parsons should be exempted from deposition based upon the "apex" doctrine. CHH claims that the Director of Risk Management occupies a high-level position within CHH's corporate structure, and Ms. Parsons has no independent knowledge of the events surrounding J.C.'s fractures. (ECF No. 150 at 7).

In response, Plaintiff claims that he should be permitted to depose Ms. Parsons for four reasons. First, Plaintiff argues that CHH has waived any privilege attaching to Ms. Parsons's investigation, because CHH disclosed various emails that it had previously withheld as privileged. (ECF No. 160 at 2). These emails contained communications forwarded to or otherwise related to Ms. Parsons's investigation. Plaintiff takes the position that, by producing these emails, CHH waived any privilege associated with the investigation. Plaintiff further asserts that not all of Ms. Parsons's actions were taken for the purpose of providing legal advice. For example, Plaintiff points to conversations Ms. Parsons had with third parties, such as the Kentucky Cabinet for Health and Community Services, and with Plaintiff.

Second, Plaintiff accuses CHH of attempting to cover up the "crimes" that led to or arose from the infant's injuries; thus, the crime fraud exception to privilege allows Plaintiff to obtain the deposition of Ms. Parsons. (*Id.* at 8). Plaintiff states that CHH failed

3

to report the infant's fractures to the proper authorities, failed to secure and maintain key surveillance video, and excluded its own Security Department from conducting an investigation into J.C. injuries, all in violation of CHH's own policies. As Plaintiff believes that J.C.'s injuries were the result of deficient security measures, Plaintiff argues that CHH's security professionals—not the hospital's risk manager—should have performed the investigation. Plaintiff suggests that CHH assigned Ms. Parsons to manage the investigation in an overt effort to shield any negative results from Plaintiff.

Third, Plaintiff claims that it is entitled to Ms. Parsons's fact work product, to the extent her work product is protected from discovery, because CHH destroyed the surveillance video that would have identified the individuals who had access and opportunity to physically harm J.C. (ECF No. 160 at 17-18). In Plaintiff's view, CHH controlled all of the evidence; particularly, the proof of liability. CHH promised Plaintiff that it would get to the bottom of J.C.'s injuries and would "leave no stone unturned." As such, Plaintiff argues, Ms. Parsons surely must have reviewed the surveillance video and other evidentiary materials, which are no longer in existence. Plaintiff insists that CHH's destruction of valuable evidence gives rise to a substantial need for Plaintiff to discover from Ms. Parsons the nature of that evidence. Plaintiff adds that any mental impressions or legal analysis of Ms. Parsons is not protected from disclosure, because she is not an attorney.

Lastly, Plaintiff rejects CHH's argument that the apex doctrine shields Ms. Parsons from deposition. (*Id.* at 21). Plaintiff asserts that Ms. Parsons is not an executive, supervisor, attorney, or legal strategist who would be covered by the apex doctrine. More importantly, Plaintiff contends, Ms. Parsons has independent, unique, and first-hand knowledge relevant to several of his claims. Therefore, the apex doctrine does not apply.

CHH replies by stating that its production of some emails does not waive the privilege that attaches to the investigation performed by Ms. Parsons, because the disclosed emails were not generated specifically for Ms. Parsons, and because CHH did not produce the Event Review Form and continues to assert its protection from disclosure. (ECF No. 161 at 9-12). CHH also refutes the appropriateness of the crime fraud exception to the attorney-client privilege, indicating that Plaintiff presents no evidence of an ongoing crime, or of a crime about to be committed, before, during, or after Ms. Parsons's investigation. (*Id.* at 8-9).

### III. Discussion

Before addressing the merits of the Motion for Protective Order, the Court first finds that neither the apex doctrine asserted by CHH, nor the crime fraud exception claimed by Plaintiff, apply to the circumstances surrounding Ms. Parsons's investigation, or her knowledge relevant to the claims and defenses in this case.

#### *A. The Record Fails to Establish that Ms. Parsons is an Apex Employee*

The "apex doctrine" applies to a specific subset of deposition notices that demand the appearance of high-level executives or high-ranking government officials. Developed to prevent a litigant from harassing or burdening a corporate or government adversary by taking depositions of its apex employees, the apex doctrine is both an expression of the proportionality requirement found at Federal Rule of Civil Procedure 26(b)(1) and a presumption of good cause for a protective order under Federal Rule of Civil Procedure 26(c). *Smithfield Business Park, LLC v. SLR International Corp.,* No. 5:12-cv-282-F, 2014 WL 547078, at *1 (E.D.N.C. Feb. 10, 2014) (citing *Performance Sales & Marketing LLC v. Lowe's Companies, Inc.,* No. 5:07–CV–00140–RLV, 2012 WL 4061680, at *4 (W.D.N.C. Sept. 14, 2012)). Under the apex doctrine, before proceeding with the

deposition of a high-level executive, a party must show that the executive (1) possesses special or unique information relevant to the issues being litigated, and (2) the information cannot be obtained by a less intrusive method, such as through written discovery or by deposing lower-ranking employees. *Id.* at *2.

Although the apex doctrine does not grant free passes to corporate executives to escape deposition testimony, it plainly deviates from the long-standing rule that "[a] witness ordinarily cannot escape examination by denying knowledge of any relevant facts, since the party seeking to take the deposition is entitled to test the witness's lack of knowledge." *Performance Sales & Marketing LLC,* 2012 WL 4061680, at *4. "To invoke the protection of the apex doctrine, the party resisting discovery must first demonstrate he or she is a high-ranking official." *Est. of Silva by & through Allen v. City of San Diego*, No. 18CV2282-L (MSB), 2021 WL 211613, at *2 (S.D. Cal. Jan. 21, 2021) (citing *Myles v. County of San Diego*, No. 15cv1985-BEN (BLM), 2016 WL 4366543, at *3 (S.D. Cal. Aug. 15, 2016). As explained in *Apple Inc. v. Samsung Elecs. Co., Ltd*:

> In order that the "apex" designation as applied to multiple executives does not itself become a tool for evading otherwise relevant and permissible discovery, the court must assess not only the materiality of the proposed deponent's knowledge of pertinent facts and the availability of other means for the party to access that knowledge, but—with apologies—the person's degree of "apex-ness" in relation to these factors. On the proverbial sliding scale, the closer that a proposed witness is to the apex of some particular peak in the corporate mountain range, and the less directly relevant that person is to the evidence proffered in support of his deposition, the more appropriate the protections of the apex doctrine become.

*Apple Inc.,* 282 F.R.D. 259, 263 (N.D. Cal. 2012). Typically, "apex" deponents have included officials at the highest level of a corporation or government; such as, governors, cabinet members, chief executive officers, chief financial officers, and members of a corporation's board of directors. These high-ranking individuals are "removed from the

6

daily subjects of the litigation" and have no unique personal knowledge of the facts at issue. *Celerity, Inc. v. Ultra Clean Holding, Inc.,* 2007 WL 205067 at *3 (N.D. Cal. Jan.25, 2007).

It is important to note that the Fourth Circuit has neither adopted, nor rejected, the apex doctrine. However, even assuming that the Fourth Circuit would adopt the doctrine, CHH has not established that Ms. Parsons qualifies as a high-ranking official for whose benefit the doctrine was developed. CHH states, without support, that Ms. Parsons is subordinate to the General Counsel, but CHH provides no proof of where Ms. Parsons, or the General Counsel, falls within CHH's corporate structure. Furthermore, Ms. Parsons does not appear to be removed from the daily subjects of the litigation given that she conducted the investigation of J.C.'s injuries. While she was not present when J.C. was injured and did not provide direct patient care to him, Ms. Parsons has unique knowledge about her investigation. She may be the only CHH employee that performed all of the tasks involved in the investigation. Other employees provided first-hand knowledge of their roles in J.C.'s case, but Ms. Parsons was the one who collected all of the pieces and put together the puzzle.

Moreover, CHH has focused largely on Ms. Parsons's role in investigating J.C.'s injuries, and thus, provides no evidence that Ms. Parsons lacks information relevant to Plaintiff's broader claims. Plaintiff has asserted additional claims of negligent supervision, premises liability, and negligent or intentional spoliation of evidence. The record before the Court is devoid of evidence to substantiate that Ms. Parsons lacks unique and special knowledge pertinent to these claims. Therefore, the record does not support application of the apex doctrine.

### B. Plaintiff Has Not Demonstrated a Basis for the Crime Fraud Exception

Plaintiff's argument in favor of the crime fraud exception to the attorney-client privilege is likewise unpersuasive. In order to establish the propriety of the crime fraud exception, Plaintiff must demonstrate that:

> (1) The client [CHH] was engaged in or planning a criminal or fraudulent scheme when [it] sought the advice of counsel to further the scheme, and
>
> (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud.
>
> Prong one of this test is satisfied by a *prima facie* showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed. Prong two may be satisfied with a showing of a close relationship between the attorney-client communications and the possible criminal or fraudulent activity.

*In re Grand Jury Proceedings*, 401 F.3d 247, 251 (4th Cir. 2005) (citations omitted). Plaintiff has not offered any evidence to show that the individuals participating in Ms. Parsons's investigation were engaged in, or planning, a crime or fraudulent scheme. Plaintiff asserts that "child abuse" and "violating the mandatory reporting duty" are crimes, but has not connected those alleged crimes to the investigation. (ECF No. 160 at 13-14). According to the record, at the time that Ms. Parsons was conducting her investigation, no one knew exactly what had happened to the infant. Tests were being performed to rule out a genetic cause of the fractures, and Ms. Parsons was collecting information regarding the circumstances surrounding the event. While child abuse was a possible cause of the infant's injuries, CHH did not have proof of abuse or of a potential abuser, at the time the infant was transferred from the facility. There is nothing in the record pertaining to the instant motion for protective order corroborating Plaintiff's suspicion that CHH engaged its General Counsel's Office in J.C.'s investigation in order

to further a criminal scheme or fraud. Although Plaintiff believes that the Security Department should have conducted the investigation, there is nothing in the record to establish that using the risk manager to investigate an injury to a patient was abnormal for CHH. Accordingly, the crime fraud exception is not relevant to the analysis here.

### C. CHH has not Demonstrated Good Cause for a Blanket Protective Order

CHH asks the Court to enter a protective order that would entirely prevent Plaintiff from deposing Ms. Parsons. CHH argues that such a far-reaching protective order is appropriate because all of the information known by Ms. Parsons was gained in her role as a subordinate to CHH's General Counsel. The undersigned notes that CHH's motion is based largely upon its conclusory premise that all of the actions taken, all of the information gained, and all of the documents created by Ms. Parsons are privileged. To be clear, there has been no judicial determination that CHH's premise is correct. Moreover, that is not the issue currently before the Court. The sole issue is whether Ms. Parsons should be exempted from deposition.

Under Rules 26(b)(2)(C) and 26(c), "the court has broad authority to limit discovery and prescribe alternative discovery mechanisms," *Minter v. Wells Fargo Bank, N.A.,* 258 F.R.D. 118, 124 (D. Md. 2009); in other words, to determine "when a protective order is appropriate and what degree of protection is required." *Furlow v. United States,* 55 F. Supp. 2d 360, 366 (D. Md. 1999) (quoting *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984)). As a general rule, protective orders "should be sparingly used and cautiously granted." *Baron Fin. Corp. v. Natanzon,* 240 F.R.D. 200, 202 (D. Md. 2006) (quoting *Medlin v. Andrew,* 113 F.R.D. 650, 653 (M.D.N.C. 1987)).

A court's customary reluctance to prohibit discovery is heightened in the case of a

9

motion seeking to prevent the taking of a deposition. *Minter,* 258 F.R.D. at 125 (citing *Static Control Components, Inc. v. Darkprint Imaging,* 201 F.R.D. 431, 434 (M.D.N.C. 2001)) ("By requesting the Court to prohibit plaintiff from deposing a witness, defendant … assumes a heavy burden because protective orders which totally prohibit a deposition should be rarely granted absent extraordinary circumstances."). The reasons for this are simple. Usually, the subject matter of a deposition is not well-defined in advance; thus, the need for prospective relief is more difficult to discern than in other methods of discovery. In addition, objections can be asserted and "a motion can be made if any need for protection emerges during the course of the examination;" therefore, a ruling prior to commencement of the deposition is not necessary to achieve a fair result. 8 Wright & Miller, *Federal Practice and Procedure,* § 2037 (3d Ed.). Because the Court can rely on counsel to assert the rights of their clients during a deposition, the burden to show good cause for an order entirely precluding the proposed deposition is especially heavy. *Medlin,* 113 F.R.D. at 653; *Motsinger v. Flynt,* 119 F.R.D. 373, 378 (M.D.N.C. 1988) ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition.").

Notwithstanding this burden, when the proposed deponent is an attorney for the opposing party, "additional threshold considerations come into play." *Allen v. Brown Advisory, LLC,* No. CV 3:20-MC-00008, 2020 WL 5603760, at *2 (W.D. Va. Sept. 17, 2020). While the federal rules do not explicitly prohibit the deposition of an opposing party's attorney, such requests are typically looked upon with disfavor. *Hughes v. Sears, Roebuck and Co.,* No. 2:09-CV- 93, 2011 WL 2671230, at *4 (N.D.W. Va. 7 July 2011). Most courts allowing the deposition of an opposing counsel require the party seeking the deposition to "establish a legitimate basis for requesting the deposition and demonstrate

that the deposition will not otherwise prove overly disruptive or burdensome." *N.F.A. Corp. v. Riverview Narrow Fabrics*, 117 F.R.D. 83, 85 (M.D.N.C. 1987). Where an attorney is a fact witness, however, "his or her deposition may be 'both necessary and appropriate.'" *Carr v. Double T. Diner*, 272 F.R.D. 431, 435 (D. Md. 2010) (quoting *N.F.A. Corp.*, 117 F.R.D. at 85 n.2).

Plaintiff correctly emphasizes that Ms. Parsons is not an attorney. Rather, she occupies a hybrid position in which she assists the General Counsel and also performs "garden variety" risk management tasks. CHH provides no evidentiary support upon which the Court can conclude that *all* of Ms. Parsons's actions and *all* of her information relevant to this case were inextricably associated with her role as a legal assistant to General Counsel. The Court cannot ignore that Ms. Parsons is the Director of Risk Management. Although her office is situated near or in the Office of the General Counsel, that does not itself confer privileged status on everything done or said by Ms. Parsons. CHH has supplied no documentation explaining Ms. Parsons's duties and responsibilities, so the Court cannot determine whether her investigation is entitled to work product protection or whether her communications with CHH employees were conducted primarily for legal advice. Risk managers typically have responsibilities that go beyond assisting the General Counsel, and they perform a number of daily tasks that have nothing to do with providing legal services. While it may be true that Ms. Parsons's investigation in this case was performed entirely at the behest of and under the direction of General Counsel, it may also be true that Ms. Parsons had an independent duty to conduct an investigation and that she has knowledge relevant to the case that was not obtained as part of a protected activities. CHH's conclusory statements alone do not constitute good cause for a broad protective order in this case.

Accordingly, the Court declines to issue a blanket protective order precluding the deposition of Ms. Parsons. Plaintiff has a right to discover through Ms. Parsons's deposition the nature of her job duties, whether CHH's privilege and work product claims pertaining to her investigation have a valid factual basis, and whether Ms. Parsons has knowledge in her position as risk manager that is relevant to Plaintiff's claims and is not privileged. Counsel for CHH certainly is not prevented from objecting during the deposition to questions seeking information that is exempt from discovery due to attorney-client privilege, work product protection, or the privilege for peer review/quality assurance. Indeed, counsel would be expected to assert those objections to the extent that they are proper. This opinion and order should not be interpreted as supporting or rejecting the assertion of any privilege or protection, and is not a ruling on whether any applicable privilege was waived by CHH when producing unredacted emails. It is so **ORDERED.**

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to counsel of record.

**ENTERED:** April 16, 2021

Cheryl A. Eifert
United States Magistrate Judge